Ruth McKinney and Harry McKinney, Appellants and Cross-Appellee, v. Edna B. Nathan, Administratrix of Estate of Joseph E. Nathan, Deceased, Appellee and Cross-Appellant.

Gen. No. 46,255.

Opinion filed March 8, 1954. Released for publication March 24, 1954.

Louis G. Davidson, of Chicago, for appellants.

Eckert, Peterson & Lowry, of Chicago, for appellee; A. R. Peterson, Harold W. Huff, and Robert G. Schloerb, all of Chicago, of counsel.

Mr. Justice Burke delivered the opinion of the court.

Ruth McKinney and Harry McKinney filed a complaint against Edna B. Nathan, administratrix of the estate of Joseph E. Nathan, deceased, for damages occasioned by the alleged negligent operation of his automobile by the decedent which resulted in a collision of that vehicle with the plaintiffs' automobile. There was a verdict for the defendant as to plaintiffs' claims upon which the court entered the judgment from which this appeal is taken. A verdict for $4,000 on her counterclaim against Harry McKinney was set aside and judgment for the latter entered, from which a cross-appeal is prosecuted. Plaintiffs' theory is that defendant's intestate negligently failed to yield the right of way to plaintiffs' automobile which was on Harlem Avenue, a preferential highway, that he ran through a plainly visible stop sign and crossed Harlem Avenue at considerable speed, crashing violently into plaintiffs' vehicle. Defendant's theory is that if the evidence was sufficient to permit the drawing of inferences, it was the function of the jury to draw those inferences and their conclusion that the administratrix was entitled to recover upon the counterclaim is supported by the law and the evidence, and that the trial was free from substantial error other than the action of the trial court in setting aside the verdict on the counterclaim.

About 9:30 on the morning of Tuesday, July 5, 1949, a clear day and the pavements dry, plaintiffs' 1942 Chevrolet sedan and decedent's 1948 Studebaker sedan collided violently at the intersection of Harlem Avenue

and 127th Street in a sparsely settled district southwest of Chicago. There were no eyewitnesses. Harlem Avenue runs north and south and 127th Street runs east and west. Both are four-lane highways at the intersection and for some 350 feet approaching it. As 127th Street approaches the intersection from the west it descends slightly, about three feet in 100. Harlem Avenue is a through or preferential highway and stop signs at the southwest and northeast corners require traffic on 127th Street to stop at Harlem Avenue. About 300 feet west of Harlem Avenue at the south side of 127th Street is a sign warning eastbound drivers of the stop sign ahead. There were no speed limit signs on Harlem Avenue south of the intersection and there was no evidence of any west of the intersection on 127th Street. A photograph introduced by plaintiffs taken immediately following the occurrence shows a sign bearing the legend "Speed Zone Ahead" immediately adjacent to the east edge of the Harlem Avenue pavement and south of 127th Street. A small real estate office building was situated at the southwest corner of the intersection about 50 feet south and west of the pavement. North and east of it were several trees. At 9:35 a. m. state highway police officers Raymond H. Stuart and James W. Lindsay received a call to go to the scene of the crash and arrived there at about 9:42 a. m., approaching the intersection from the north. Officer Lindsay said that this was a blind corner so that a northbound driver would not be able to see to the west until he reached the intersection. There was no direct evidence as to the direction in which the vehicles were traveling prior to the occurrence. From the debris the officer stated that the impact took place at the intersection of the inner lanes of the two highways. Officer Lindsay was permitted to state an opinion that the Chevrolet had been northbound on Harlem Avenue and the Studebaker eastbound on 127th Street. On cross-

examination he stated that the evidence upon which the opinion was based would support an equally valid and contrary inference. There is no direct evidence as to where the cars were before the collision.

The vehicles came to rest at the northeast corner, the front of the Chevrolet against a tavern building and part of it across gasoline pumps which were south and west of the building and knocking down the most southerly of the three pumps. The Studebaker stopped facing southeast off the pavement about 40 feet east and over 100 feet north, and the Chevrolet stopped about 75 feet east and 75 feet north of the point of impact. Both vehicles traveled more than 100 feet from the point of impact, which was indicated by the presence of dirt and pieces of headlight glass in the intersection, and were about 30 feet apart when they stopped. There were no skid marks leading to the point of collision. The left-front corner and left side of the Chevrolet and the right-front corner and the right side of the Studebaker came into violent collision. Officer Lindsay admitted that it was possible that the same parts of the vehicles would come together and that they would have ended up where he found them if the Studebaker had been going south on Harlem Avenue and turning left into 127th Street, and the Chevrolet had been going east on 127th Street. The Chevrolet was driven by Harry McKinney, a 24-year-old mechanic employed and living in San Jose, California. Riding with him was his wife Ruth McKinney, a 26-year-old registered nurse. The Studebaker was driven by Joseph E. Nathan, age 63, an employee of the Sanitary District, whose work consisted largely of maintaining and operating recording instruments used for the elevation of water pressure at various pumping stations, treatment plants and along rivers and canals owned and operated by that District, and who used his car in this work. After the collision the police officers

found Mr. McKinney unconscious behind the wheel of his car. His wife was on the ground semiconscious. Mr. Nathan had been thrown out of his car. Both plaintiffs were unconscious or semiconscious for long periods of time, had sustained severe cerebral concussions and were unable to recall the events preceding the occurrence. Mr. Nathan sustained injuries which caused his death about noon on the day of the occurrence.

There was evidence that both McKinney and Nathan were careful drivers. Nathan lived at 5344 Harper Avenue on the south side of Chicago. His wife last saw him sometime before 5 :00 a. m. on the day of his death at Galesburg, Illinois, which is about 182 miles southwest of Chicago, at which time he left there to go to work. His wife said that most of his work was at the pumping station in the vicinity of 125th Street and Michigan Avenue in Chicago. His working hours were from 8 in the morning to 4 :30 in the afternoon. A fellow employee testified that one of the treatment plants where decedent called to repair instruments was located where the Calumet Sag channel crosses Harlem Avenue about at 123rd Street. The Calumet Sag channel also crosses 127th Street about two miles east of Harlem Avenue. This employee stated that decedent's headquarters were at the Calumet sewage treatment works at 123rd and South Park Avenue. Don Brown, decedent's supervisor, testified that decedent would have been there on the day of the occurrence.

Plaintiffs maintain that the verdict as to their claims is against the manifest weight of the evidence, that it was decedent's duty to stop and ascertain definitely whether he could safely proceed into the protected thoroughfare, that the physical facts demonstrate that he did neither, that where the physical facts point unerringly to defendant's liability a judgment in his favor will be reversed, that they had a right to assume that defendant would yield the right of way, were not re-

541

quired to anticipate that he would run through a stop sign directly into their path, that defendant's counterclaim admitted plaintiffs' allegations of the directions in which the vehicles were traveling, that evidence to the contrary could not properly be considered, that the evidence, apart from the pleadings, shows conclusively that plaintiffs were northbound and decedent eastbound, and that it was within the trial court's discretion to permit the police officer to give his opinion as an expert that plaintiffs were northbound and decedent eastbound at the time of the collision. Defendant answers that the verdict is supported by the evidence, that the physical facts point to the liability of plaintiffs, that plaintiffs failed to prove that the decedent ran through a stop sign, that the pleadings do not make the admission claimed, that no questions were raised concerning the form of the pleadings, and that the evidence does not support the contention of plaintiffs concerning the operation of the vehicles prior to the impact.

Plaintiffs allege in Paragraph 3 of the complaint that they were northbound on Harlem Avenue and in Paragraph 4 that decedent was eastbound on 127th Street. Paragraph 3 of the answer filed by the administratrix states that she has no knowledge as to the allegations of Paragraph 3 and "therefore denies the same and demands strict proof thereof." Paragraph 4 of the answer says that she "believes the allegations of Paragraph 4 to be true and correct." Paragraph 2 of her counterclaim states that on the day of the occurrence her husband was the owner of an automobile which he was driving along and upon 127th Street "at and near the intersection in question." Paragraph 4 of the counterclaim states that at the time and place "aforesaid" Harry McKinney was operating a certain automobile along and upon Harlem Avenue at and near the intersection "in question." The answer and counterclaim

542

were filed two months after the filing of the complaint. Defendant did not attempt to withdraw or amend them. Plaintiffs argue that since the statement of want of knowledge in Paragraph 3 of the answer was unaccompanied by the affidavit required by par. 2 of sec. 40 of the Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 164, subd. (2); Jones Ill. Stats. Ann. 104.040, subd. (2)], the allegations of the complaint must be deemed to be admitted, and that the statement in Paragraph 4 of the answer, not being an explicit denial of the allegations of Paragraph 4 of the complaint, must also be deemed to be admitted. They also call attention to the allegations of Paragraphs 2 and 4 of the counterclaim, say that these admissions are conclusive and that evidence disputing them cannot be considered.

■ ■ The parties may, by the introduction of evidence or their conduct in the trial, waive formal pleadings or form their own issues on the evidence introduced, and they may voluntarily present under the evidence issues not presented by the pleadings. An objection that a certain matter is not an issue under the pleadings or that it is not denied or properly denied may be waived by a party where he introduces or brings out evidence bearing on the subject, or tries the case as if the matter were not in issue. Section 42 (3) of the Practice Act [Ill. Rev. Stats. 1953, ch. 110, § 166, subd. (3); Jones Ill. Stats. Ann. 104.042, subd. (3)] provides that all defects in pleadings, either in form or substance, not objected to in the trial court, shall be deemed to be waived. Defendant's counsel, in his opening statement to the jury, was silent about directions. Counsel for plaintiffs, in his opening statement, told the jury that his clients were traveling northbound on Harlem Avenue. He did not say anything to the jury about the direction of travel of the Studebaker car driven by Nathan. In his final argument to the jury he treated the direction of travel as an issue in the case. He said

to the jury, "In addition to the testimony of the officers, what other evidence is there as to the directions as to which these cars were traveling?" and argued the point at length. Further in his argument to the jury plaintiff's attorney said that in 1949 when defendant filed her answer and counterclaim she "admitted that they were on 127th Street." On objection of defendant and a colloquy between counsel as to the claimed admission in the pleadings, the attorney for plaintiffs said, "All right, they didn't admit them. They said they believed they were true. That's what they said back in 1949. Now, that is something you can take into account in this case—what they said back in 1949." Continuing his argument to the jury he said that "if you believe that Mr. Nathan was operating his automobile on 127th Street, you will know that Harlem Avenue was a through street and that he was under a duty to stop at that intersection before he entered into Harlem Avenue. If he had stopped at 127th would that automobile look like this? Is it conceivable in your minds that this accident would have occurred if the car on 127th Street would have stopped before it entered Harlem Avenue?"

 Continuing his argument to the jury, the attorney for plaintiffs said: "Now, I don't know other than that Mr. Huff [attorney for defendant] made a comment to the police about his man going in a southerly direction—I don't know what his contention is now as to how this accident happened, but he is going to tell you that and I will have an opportunity to answer." The attorney for defendant in his final argument to the jury also argued to the jury the effect of the pleadings. He argued that if inferences were to be drawn there could be a reasonable inference from the evidence that Nathan who had visited a station of the Sanitary District on the canal on Harlem Avenue about a mile north of 127th Street, was driving south on Harlem Avenue and made a left turn east at 127th Street. He also dis-

puted the contention of plaintiffs' attorney that his clients were going north on Harlem Avenue and argued that the force of the impact was delivered by the Chevrolet automobile. In his rebuttal argument the attorney for plaintiffs, referring to the argument of his opponent, said: "He has got the man going east, and he has got him going south. Back in 1949 he knew what road he was on. . . . Now, if the man was going south and he turned left in front of our car and we crashed into him, and we were going at that enormous rate of speed, how does he explain that picture? . . . He says something about the canals. This man was around canals, probably going south. Why didn't they bring in from the Sanitary District the man who this man worked for? . . . If that is the case, where is all this business about going south on Harlem Avenue?" The purpose of pleadings is to present, define and narrow the issues and to limit the proof to be submitted on the trial. If there was no issue of fact as to the direction in which the cars were traveling, the jury should be so advised by the court or by the attorneys under the direction of the court. The purpose of submitting a case to the jury is to have them pass on issues of fact. The instant case was tried on the theory that there was an issue as to the directions and movements of the cars and the respective attorneys tried and argued the case with such an issue in view. Having done so, the plaintiffs cannot now argue that there was no issue for the jury to determine as to the directions and movements of the cars.

Plaintiffs say that a fair analysis of the evidence will demonstrate that they were northbound on Harlem Avenue and the decedent eastbound on 127th Street, that he failed to stop for the stop sign at Harlem Avenue and drove into the intersection at considerable speed when the northbound vehicle was too close to permit plaintiffs to slow down or alter their course before the

545

collision, and that the verdict can be accounted for only on the ground of sympathy for the defendant, a widow past middle age who was entirely dependent on her husband for support, intensified by inflammatory remarks by defendant's counsel during his argument to the jury. The photographs show a terrific impact at the left-front corner of plaintiffs' Chevrolet and the right-front corner of decedent's Studebaker, and severe and extensive damage to the left side of the Chevrolet and the right side of the Studebaker. In addition, the steering wheel of the Chevrolet is badly bent and the windshield and window glass broken, the luggage compartment cover of the Studebaker is sprung, its steering wheel bent down and toward the right, the front seat broken and moved forward against the floor boards. After the collision the vehicles traveled northeasterly for more than 100 feet, the plaintiffs' car stopping upright about 75 feet east and 75 feet north of the point of impact, and the decedent's car coming to rest facing southeast about 40 feet east and 100 feet north of the point of impact. The absence of skid marks, the violence of the collision and the direction of the force tend to show that neither driver applied his brakes or altered his course appreciably before the collision and that the vehicles came together at approximately a right angle. Both vehicles must have been moving at a considerable speed at the moment of impact.

██ ██ Any reconstruction of the accident must begin with the positions of the vehicles after the collision and proceed by hypothesis to the point of collision as indicated by the presence of the debris on the highway. Officer Lindsay was permitted to testify hypothetically concerning the direction of travel of the cars prior to the collision. Under cross-examination he admitted that the facts which led him to one conclusion would support another conclusion if one were to start with a different assumption. There is no evidence to support

546

the allegation that the decedent failed to stop for the stop sign. Notwithstanding the tremendous force of the collision the Chevrolet veered but slightly from the direction of travel ascribed to it. In the trial court plaintiff endeavored to convince the jury that decedent was speeding across 127th Street in a hurry to get to his work, failed to stop at Harlem Avenue and that this caused the collision. Mr. Nathan was a man of careful and conservative habits. There was evidence that decedent used his car in visiting the gauges in the course of his work. The canal close to the scene of the collision was about one mile north thereof. It was entirely possible that he had visited the canal north of the scene of the accident and was coming from that point. The contentions of both parties are based largely on conjecture. We conclude that the verdict for the defendant as to plaintiffs' claims is not against the manifest weight of the evidence. We find that the evidence does not support a verdict for the defendant on the counterclaim and that the court was right in entering judgment for Harry McKinney on the counterclaim.

██ ██ Plaintiffs urge that defendant's counsel during the arguments to the jury made inflammatory and prejudicial remarks. Plaintiffs' attorney did not consider the argument to be inflammatory as he voiced no objection. We cannot say that the argument was inflammatory or prejudicial. Finally, plaintiffs assert that the court erred in giving five instructions. We have read all of the instructions and are convinced that the jury was fairly instructed. While criticisms may be leveled at the five instructions mentioned by plaintiffs, we do not believe that the giving of these instructions constitutes reversible error.

For the reasons stated the judgment of the circuit court of Cook county is affirmed.

*Judgment affirmed.*

Niemeyer, P. J. and Friend, J., concur.