(No. 49819.

PIONEER TRUST AND SAVINGS BANK, Appellant, v. COUNTY OF COOK *et al.*—(Village of Arlington Heights, Appellee.)

*Opinion filed May 26, 1978.*

512

KLUCZYNSKI, J., took no part.

Theodore J. Novak, Stanley N. Gore and Don E. Glickman, of Rudnick & Wolfe, of Chicago, for appellant.

Jack M. Siegel, of Chicago, for appellee.

MR. JUSTICE CLARK delivered the opinion of the court:

The question is whether or not the circuit court of Cook County should have ordered a writ of *mandamus* directing the defendants, Cook County and its Department of Building, Zoning and Environmental Control (hereafter building department), to issue a zoning certificate and building permit to Alexander Magnus (hereafter plaintiff),

the beneficial owner of 42 acres, located in Elk Grove Township, which is an unincorporated area in Cook County, contiguous to Arlington Heights and Mount Prospect, and held in trust by Pioneer Trust and Savings Bank. Beginning in 1974 plaintiff proposed the construction of 728 units and applied for a permit to build the first 132 units of a retirement-housing project. The building department denied the permit. The property was already improved with a nursing home. The circuit court had ordered a writ of *mandamus* to issue; vacated that order and allowed the village of Arlington Heights, and later the village of Mount Prospect, to intervene as defendants; and again ordered the writ to issue after further hearings. Arlington Heights, the sole appellee before us, alone appealed to the appellate court, which reversed (49 Ill. App. 3d 630). We granted plaintiff leave to appeal. 58 Ill. 2d R. 302.

The facts must be set out in some detail. Prior to 1966, plaintiff's property was zoned R–4 (single-family residence). Because his nursing home constituted a legal nonconforming use, plaintiff applied for rezoning to R–5 (general residence) which would have made the nursing home a conforming use and allowed for enlargement and more improvement. On November 15, 1965, the zoning board of appeals of Cook County (hereafter zoning board) held a hearing on the application during which Arlington Heights and Mount Prospect expressed their objections to the change in zoning unless plaintiff executed a restrictive covenant running with the land for 25 years. (A letter of November 16, 1965, from Jack Siegel, counsel for Arlington Heights then and in the case before us, to the zoning board confirms this.) Plaintiff executed the covenant under which the property would be used only for the purpose of "nursing, convalescent and retirement home until the expiration of a period of 25 years." The zoning board recommended that the zoning change to R–5, with

the restrictive covenant, be made, found the public interest supported the change, and believed plaintiff "should not be placed in the position of having to reapply for permission to expand the operation every time an additional building or enlargement" is planned. The zoning board, in its findings of December 27, 1965, said it was "impressed with the operation and is of the view that it is a definite asset to the community and to the particular area which is involved," found the operation had no detrimental effects nor anticipated any "in the expansion and enlargement" of the complex, and felt "the park-like atmosphere" was beneficial to the area. The Cook County board of commissioners (hereafter county board) adopted the recommendation.

In July 1971, Cook County and its building department approved plaintiff's plans and issued a building permit for the construction of a four-unit prototype retirement building on the property. The prototype was constructed to determine whether there was a market for retirement housing. Plaintiff and his wife and mother visited other retirement developments after the prototype was built. In the fall of 1973, plaintiff met architect Rick Strusiner, who was retained in February 1974 to develop plans for a nursing and retirement-housing complex. In the spring of 1974, Strusiner contacted the zoning administrator for Cook County's building department regarding the plans. In September 1974, having received no response, Strusiner told the zoning administrator that plaintiff was ready to apply for a permit. The administrator replied that plaintiff first would have to file a *mandamus* action or receive an opinion from the State's Attorney to determine whether the projected development was proper under the present zoning. Strusiner, while waiting for the requested opinion, attempted to file in December 1974 the application for the permit but the building department refused it.

In January 1975, the State's Attorney gave his

opinion:

> "*** if the proposed construction is for a nursing, convalescent or retirement home, it will not violate the terms of the restrictive covenant.
>
> The determination of whether this particular construction as retirement home is a factual one that should be made by your department [building department]. It would appear to us that if the building were constructed and actually used as proposed, it would be defined as a retirement home."

The zoning administrator notified Strusiner of the opinion and suggested that plaintiff's application for a zoning certificate and building permit be made. When the application was made in July 1975, it was again refused because no application for a permit from the Metropolitan Sanitary District was on file. In December 1975, the permit was refused because of an anticipated change in the comprehensive zoning plan.

The comprehensive amendment to the Cook County zoning ordinance was under consideration apparently since 1973. At the end of August 1975, an interim ordinance for special review of all applications for building permits, a "moratorium," went into effect for three months. After public hearings, the county board, sitting as a committee, on January 14, 1976, voted to approve the zoning amendment under which plaintiff's property would be zoned R—6 (allowing only eight units per acre in contrast to the 17.4 units per acre allowed under R—5). On January 19, the county board adopted the amendment.

Plaintiff filed his action for *mandamus* on January 14. Two days later, the defendants filed their answer, a trial was held, and the circuit court ordered the writ to issue. At the beginning of February, the circuit court vacated the January 16 order and allowed Arlington Heights to intervene. After the second trial, the order granting the writ of *mandamus* was entered on April 1, 1976. Other facts and evidence will be set out as is necessary.

The standard for review of zoning cases, as in other

cases, is that the findings of the trial court will not be disturbed unless against the manifest weight of the evidence. *La Salle National Bank v. County of Cook* (1957), 12 Ill. 2d 40, 48; *Standard State Bank v. Village of Oak Lawn* (1963), 29 Ill. 2d 465, 471.

The appellee, Arlington Heights, contends before this court what it contended before the appellate court: Plaintiff was not entitled to a writ of *mandamus* for the issuance of a zoning certificate and a building permit. Arlington Heights further contends that plaintiff was not entitled to prove change of position or vested right under the R—5 classification when no such allegations appear in the pleadings; plaintiff did not substantially change his position in reliance upon the probability of a building permit being issued; and the 1966 reclassification of plaintiff's property to R—5, subject to certain conditions and a restrictive covenant, was invalid.

At the time of trial, plaintiff's property was zoned R—6. Arlington Heights maintains that for a writ of *mandamus* to issue, the one seeking it must show a clear right to it (*People ex rel. Interchemical Corp. v. City of Chicago* (1963), 29 Ill. 2d 446, 450; *cf. Daniels v. Cavner* (1949), 404 Ill. 372, 375-76); and under the R—6 classification, plaintiff's request for a building permit—and hence the *mandamus*—must fail because a retirement complex was not a permitted use. Plaintiff argues that the R—5 classification of his property, in effect from 1966 until January 19, 1976, is the correct classification because he substantially changed his position during that decade in reliance upon the R—5 classification. Plaintiff agrees that a property owner has no right in the continuation of a zoning classification; that each case must be decided on the basis of the ordinance in effect at the time of decision by a court. However, there is an exception to this rule where one has substantially changed his position in reliance upon the probability of issuance of a building permit under a previous zoning. *E.g., Cos Corp. v. City of*

*Evanston* (1963), 27 Ill. 2d 570, 576-77, *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 416.

Initially, we must dispose of Arlington Heights' argument that plaintiff is not entitled to prove change of position or vested right under the R—5 zoning because no such allegation appears in the pleadings. It is true that plaintiff in his pleadings failed specifically to allege reliance on the actions of Cook County and the building department, and a vested right in the R—5 classification. However, there exists an exception, not passed on by this court, to the rule that issues are formed by the pleadings and that allegations and proof must correspond in order to recover: where both parties form the issues in the trial court notwithstanding the failure to set the issues out in the pleadings. (*E.g., Tonchen v. All-Steel Equipment, Inc.* (1973), 13 Ill. App. 3d 454, 467, *Hedrich v. Village of Niles* (1969), 112 Ill. App. 2d 68, 75.) An objection that an issue was not raised in the pleadings may be waived by the conduct at the trial of the objecting party or by introduction of evidence on the issue. During the examination of Nicholas Phillips, zoning land planner for the zoning board, counsel for plaintiff stated that his theory of the case was that plaintiff had "a vested right because of his reliance and because of substantial expenditures." There was no objection that this theory was not pleaded. This occurred early in the trial. On at least two other early occasions in the course of the trial, plaintiff's theory of the case was made evident without objection that plaintiff had failed to raise that in the pleadings. Therefore Arlington Heights' objection now must fail.

We turn then to the question of whether or not the plaintiff did have a vested right in the R—5 zoning due to a substantial change in position in reliance upon the probability of issuance of a building permit. Although the appellate court found the R—5 classification, with restric-

tive covenant, to be valid, it concluded that the circuit court's ruling was in error on the grounds that plaintiff's retirement-housing project was not a permitted use under R—5 and hence there was no probability of a building permit being issued.

The record shows that plaintiff's proposed retirement project would be for individuals 60 years of age or over who were not necessarily retired but had a doctor's certificate indicating they were capable of independent living. Both the plaintiff and his architect testified the proposed complex was entirely different from an apartment complex. The retirement complex would have a central dining hall where some meals would have to be taken, a recreation center, oversized halls and elevators for use of stretchers, extensive laundry facilities, maid service, a nurse's station to which each unit would have an emergency communications system tie-in, and a security system with bedside and bathroom alarms. All the units would be connected so that it would be unnecessary to go out of doors. Each unit would consist of a small "Pullman" kitchen, living area without dining room, and a bedroom with a bathroom off that. This retirement complex, "as with all other retirement facilities," according to the plaintiff, would not be licensed by the State.

Under the R—5 zoning of the Cook County zoning ordinance (section 8.3—5), in effect prior to 1976, the following uses were permitted:

"Any use permitted in the R 1 District—unless otherwise set forth or superseded hereinafter—and in addition, the following uses:

(1) *Two-family Dwellings*

(2) *Multiple-family Dwellings,* but excluding commercial uses

(3) *Health and Medical Institutions, Nursery Schools*

    (a) Convalescent, nursing, and rest homes

(b) Hospitals and sanitariums, but not including institutions for the care or treatment of insane, feeble-minded, alcoholic, or drug addict patients

(c) Institutions for the care of the aged and for children

(d) Nursery and children's day schools, (for profit)."

The appellate court's analysis of the requirements for construction of zoning ordinances is correct. Effect should be given to the intention of the drafters by concentrating on the terminology, its goals and purposes, "the natural import of the words used in common and accepted usage, the setting in which they are employed, and the general structure of the ordinance." (*La Salle National Bank v. Thresholds* (1975), 27 Ill. App. 3d 635, 641.) The appellate court turned to the State statutes (Ill. Rev. Stat. 1973, ch. 111½, par. 35.16) for a definition of "Institutions for the care of the aged" and determined that plaintiff's project did not fit the description. It then concluded that the zoning ordinance manifested an intent to incorporate the State statutory definition because all the "enumerated institutional R—5 uses are defined in Illinois law, and *all* are institutions requiring licensing, control, and supervision by the State authorities" (49 Ill. App. 3d 630, 641), and because the statutes require one to obtain a license from the State for a home for the aged before operating or advertising it (Ill. Rev. Stat. 1973, ch. 111½, par. 35.17).

We agree with the appellate court that plaintiff's project does not fit the State statutory definition of "home for the aged" (Ill. Rev. Stat. 1971, ch. 111½, par. 35.16). However, we do not find that pivotal because we are not convinced the zoning ordinance manifestly intended incorporation of the statutory definition. First, the appellate court is incorrect in stating that *all* the enumerated R—5 institutional uses are defined in and required to

have State licenses by the statutes. Nursing homes, hospitals, sanitariums and institutions for the care of the aged are defined and require licensing (Ill. Rev. Stat. 1973, ch. 111½, pars. 35.16, 35.17, 144, 145), as is the case with institutions for the care of children, and nursery and children's day schools (Ill. Rev. Stat. 1973, ch. 23, par. 2211 *et seq.*). However, neither convalescent homes nor rest homes, listed as R–5 institutional uses, are defined in the State statutes. Second, the drafters of the zoning ordinance failed to include any language referring to or incorporating statutory definitions and State licensing.

Third, where "words are capable of having various meanings depending on the circumstances in which they are used, the definition in one legislative act has little or no value in determining its meaning in another." (*County of Lake v. Gateway Houses Foundation, Inc.* (1974), 19 Ill. App. 3d 318, 325.) Although acts are *in pari materia* if they relate to the same subject or object and must be construed together even though enacted at different times (*Spring Hill Cemetery v. Ryan* (1960), 20 Ill. 2d 608, 615), that is not the situation before us. Here the zoning ordinance is unrelated to the Nursing homes, sheltered care homes, and homes for the aged Act (Ill. Rev. Stat. 1973, ch. 111½, par. 35.16 *et seq.*) or the Child Care Act of 1969 (Ill. Rev. Stat. 1973, ch. 23, par. 2211 *et seq.*). In *Gateway*, Lake County sued to enjoin the alleged operation of a treatment center for drug addiction in a residential area. The county ordinance permitted the operation of drug treatment centers in business and highway commercial zones, but not in residential areas. The defendant Gateway maintained it was a structured residence for drug abusers. The trial court ruled that since the Lake County ordinance failed to define "treatment center," that term should be given its common meaning and that the definitions of "treatment" and "drug addiction" in the Dangerous Drug Abuse Act (Ill. Rev. Stat.

1973, ch. 91½, pars. 120.3—4, 120.3—7) were not controlling. The appellate court held:

> "Here, as the defendant points out, the Drug Addiction Act and the Lake County zoning ordinance are unrelated; they were passed on different dates and by different legislative bodies. If the meanings in the State law were intended to apply the County should have made reference to the Drug Addiction Act or included a similar definition in the amendment to the ordinance. Without the ordinance indicating otherwise, a property owner should be able to rely on the terms used in the zoning ordinance meaning what they are commonly understood to mean."
>
> . (*County of Lake v. Gateway Houses Foundation, Inc.* (1974), 19 Ill. App. 3d 318, 325.)

Accordingly, the narrow construction the appellate court placed on section 8.3—5 of the Cook County zoning ordinance, on the basis of State statutes, is inappropriate. The trial court reasonably concluded that plaintiff's retirement complex was permissible under the R—5 classification.

Having disposed of whether or not plaintiff's retirement project was a permitted use under R—5, we may finally turn to the question of his substantial reliance on the probability of the issuance of a building permit under the R—5 zoning. The rule is:

> "*** where there has been a substantial change of position, expenditures or incurrence of obligations made in good faith by an innocent party under a building permit or in reliance upon the probability of its issuance, such party has a vested property right and he may complete the construction and use the premises for the purposes originally authorized, irrespective of subsequent zoning or a change in zoning classifica-

tions." (*People ex rel. Skokie Town House Builders, Inc. v. Village of Morton Grove* (1959), 16 Ill. 2d 183, 191.)

Accord, *People ex rel. Interchemical Corp. v. City of Chicago* (1963), 29 Ill. 2d 446, 448, *Cos Corp. v. City of Evanston* (1963), 27 Ill. 2d 570, 576-77, *Illinois Mason Contractors, Inc. v. City of Wheaton* (1960), 19 Ill. 2d 462, 465, *Nott v. Wolff* (1960), 18 Ill. 2d 362, 370-71, *Fifteen Fifty North State Building Corp. v. City of Chicago* (1958), 15 Ill. 2d 408, 416.

Beginning in 1965, with the positive and commendatory findings and recommendations of the zoning board and in 1966 with the county board's approval of rezoning his property to R—5 with the restrictive covenant permitting the development of "nursing, convalescent and retirement home," plaintiff was encouraged in his consideration of further development of "Magnus Farm." Although hardly definitive or conclusive, the issuance of a building permit by the county for his prototype retirement units in 1971 could hardly have been anything but further encouragement for further development of a nursing-retirement complex. In 1973, plaintiff met Strusiner, who developed initial plans for a complex and who was hired in early 1974. Thereafter plans for the complex were developed in detail and finalized. The expenditures were many; for example, $65,000 for the retirement prototypes, $7,000 for trips to view other retirement developments, at least $29,000 for the architect (toward a $45,000 bill), $10,250 for the structural engineer, $10,000 for mechanical and electrical engineers (toward a $15,000 bill), $2,300 for soil and water tests, $2,000 deposit for the building permit, and other expenditures.

In early 1975, the zoning administrator informed plaintiff that in the State's Attorney's opinion the project was a permitted use under the R—5 zoning with restrictive covenant, and suggested that plaintiff again attempt to file

his application for a building permit, which was done in July 1975.

We also find supportive of plaintiff's position the testimony of Nicholas Phillips, the zoning land planner for the zoning board at the time of trial and with Cook County since 1957. He testified that retirement houses would come under the R—5 classification. In sum, the actions of the defendants, Cook County and the building department, who have not been involved in the appeal of this case, encouraged plaintiff, who relied on the probability of the building permit issuing and substantially changed his position.

The final argument of Arlington Heights is that the R—5 classification of plaintiff's property was void *ab initio* and invalid because it was subject to conditions and a restrictive covenant. Although we agree with the appellate court's reasoning that a conditional rezoning is not invalid *per se* (*Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, 48-51), we conclude that Arlington Heights is estopped from raising this argument as would have been the defendants Cook County and the building department had they appealed. Arlington Heights, whether it induced plaintiff to agree to the restrictive covenant or acquiesced in the rezoning if accompanied by the restrictive covenant in 1965-66, clearly and unequivocally, without hint of coercion, agreed to the rezoning to R—5 with the restrictive covenant. It ought not be able to profit by its earlier inducement or acquiescense. See *Cities Service Oil Co. v. City of Des Plaines* (1961), 21 Ill. 2d 157, 160-61.

For the reasons stated, we find the trial court correctly ordered a writ of *mandamus*. We affirm its judgment and reverse the decision of the appellate court.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE KLUCZYNSKI took no part in the consideration or the decision of this case.