*In re* DENICE MOORE (The People of the State of Illinois, Petitioner-Appellee, v. Denice Moore, Respondent-Appellant).

First District (4th Division) No. 1—97—0283

Opinion filed September 30, 1997.

CERDA, J., dissenting.

John B. Lower, Ellen Holden Clark, and William E. Coffin, all of Legal Advocacy Service, of Chicago, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, James E. Fitzgerald, and Julie Line Bailey, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE WOLFSON delivered the opinion of the court:

Respondent Denice Moore appeals from a December 10, 1996, order of the circuit court involuntarily committing her to the Illinois Department of Mental Health and Developmental Disabilities. We reverse.

BACKGROUND

On November 15, 1996, Maddix Moore petitioned the circuit court for an order involuntarily committing his daughter to a mental health facility. Therein, Moore alleged that immediate hospitalization was necessary because respondent was mentally ill and could be

reasonably expected to inflict serious harm upon herself or another in the near future. Moore further alleged that respondent had been hospitalized on many prior occasions; that she had threatened to kill him and her mother, Doris Moore; that she physically assaulted her mother a few days earlier; that she "[y]ells and curses"; that she "[w]alks around without proper clothing"; that she has poor hygiene; and that she does not eat properly and has lost weight.

An order of detention was entered by the circuit court that same day, after which respondent was taken to Chicago Reed Mental Health Center. There, she was examined by two psychiatrists, Drs. Dang and Crisostomo.

Dang found respondent to be mentally ill and unable to provide for her basic physical needs so as to guard herself from serious harm. Dang specifically found respondent to be "acutely psychotic," noting her disorientation, illogical thinking, and absence from reality. It was Dang's opinion that respondent reasonably could be expected to inflict serious harm upon herself or another in the near future. Dang recommended that respondent be involuntarily committed. Crisostomo reached the same conclusions as Dang and also recommended respondent's involuntary commitment.

A commitment hearing was held on December 10, 1996. At that hearing, psychiatrist Dr. Paule Philippe testified that she had observed respondent during the week prior to the hearing and during that time had become acquainted with respondent and had reviewed respondent's records. Philippe also discussed respondent's care with respondent's family and former psychiatrist. According to Philippe, respondent's records chronicle 13 hospitalizations since 1981. They also describe respondent's most recent circumstances. Respondent was living on the street for several days during the winter, sleeping on porches; she was without a coat, shoes or socks, and was not eating. Respondent's mother also told Philippe that, in November, respondent stopped eating for a few days until she became so hungry that she began begging for food. However, when food was given to her, she became agitated and began to scream, at which time she was arrested and jailed. Philippe was further informed that when respondent would receive money, she would secure lodging in a hotel until her money ran out, then return to the street.

Based upon this information and her own independent examinations of respondent, Philippe diagnosed respondent as suffering from psycho-affective disorder. According to Philippe, respondent is "out of touch with reality," "incoherent," subject to moods swings and, at times, "very depressed." Philippe further testified that respondent is psychotic with paranoid delusions that "everybody is after her." It

was also Philippe's opinion that respondent was unable to provide for her basic needs and that a less restrictive alternative to hospitalization was not viable because respondent could not "take care of herself outside." Philippe further stated that respondent needed in-patient treatment.

A treatment plan for respondent was then introduced into evidence.

On cross-examination, Philippe conceded that what constitutes "taking care of one's self" is a debatable issue and that while some may see a homeless person as someone unable to care for himself, others may see that person as resourceful. Philippe further conceded that respondent did not use the money she received for drugs or alcohol, but for shelter. Philippe also agreed that if one is hungry, the proper response is to ask for food.

The circuit court then listened to closing arguments on the issue of respondent's inability to provide for her basic physical needs, after which it found respondent subject to involuntary commitment. According to the circuit court, respondent was proved to be mentally ill and unable to provide for her basic physical needs. This appeal followed.

DECISION

The State proved respondent is mentally ill. The State also proved that because of her illness Denice Moore is unable to provide for her physical needs so as to guard herself from serious harm.

A person is subject to involuntary commitment under section 1—119(2) of the Mental Health and Developmental Disabilities Code (Mental Health Code) when those allegations are made and proved by clear and convincing evidence. 405 ILCS 5/1—119(2) (West 1996).

The problem here is that the State never alleged section 1—119(2). The State alleged section 1—119(1), which provides for involuntary commitment of "[a] person with mental illness and who because of his or her illness is reasonably expected to inflict serious harm upon himself or herself or another in the near future." 405 ILCS 5/1—119(1) (West 1996). Everyone agrees the State did not even attempt to prove the respondent comes within section 1—119(1). Nor did the State ever attempt to amend its pleadings to conform to the proof.

The State relies on waiver. We do not see how the respondent could have waived her right to be judged according to the allegations of the pleadings. Issues are formed by pleadings. Even in a routine civil case a party cannot recover after stating one cause of action in a complaint and presenting a different one by proof. *Gaiser v. Village of Skokie*, 271 Ill. App. 3d 85, 92, 548 N.E.2d 205, 211 (1995).

This is not a routine civil case. Custodial confinement is a serious deprivation of individual liberty. See *O'Connor v. Donaldson*, 422 U.S. 563, 45 L. Ed. 2d 396, 95 S. Ct. 2486 (1975). The Mental Health Code reflects the public interest in not subjecting a person to unjustified confinement. *People v. Sansone*, 18 Ill. App. 3d 315, 323, 309 N.E.2d 733, 739 (1974). The two section 1—119 definitions of a person subject to involuntary commitment are separate and distinct. We are not willing to say proof of one is proof of another.

It is not our function to correct the State's pleading errors. If we do that, we are authorizing the State to engage in the careless handling of a person's individual liberty.

It very well could be that Denice Moore should be confined for treatment. But it has to be done according to law. Because we do not believe that happened in this case, we reverse the trial court's order of involuntary commitment.

Reversed.

BURKE, J., concurs.

JUSTICE CERDA, dissenting.

The circuit court did not find respondent subject to involuntary commitment on the alleged basis, but on the unalleged basis that she was mentally ill and unable to provide for her basic physical needs so as to guard herself from serious harm. Although that finding by the circuit court was not based upon the pleadings, the absence of such pleadings may be waived by an opposing party's conduct at trial. *Pioneer Trust & Savings Bank v. County of Cook*, 71 Ill. 2d 510, 518, 365 N.E.2d 913 (1978); *Hemingway v. Skinner Engineering Co.*, 117 Ill. App. 2d 452, 463, 254 N.E.2d 133 (1969); *Hedrich v. Village of Niles*, 112 Ill. App. 2d 68, 75, 250 N.E.2d 791 (1969); *McKinney v. Nathan*, 1 Ill. App. 2d 536, 543, 117 N.E.2d 886 (1954); *Continental Concrete Pipe Corp. v. Century Road Builders, Inc.*, 195 Ill. App. 3d 1, 14, 552 N.E.2d 1032 (1990).

I believe that respondent waived the failure to specifically plead that she was mentally ill and unable to provide for her basic physical needs so as to guard herself from serious harm by her conduct at the commitment hearing. At that hearing, respondent not only proceeded without objection, but also maintained throughout that her inability to provide for her basic physical needs so as to guard herself from serious harm was not proved by clear and convincing evidence. Under such circumstances, respondent should not now be heard to complain as she does. *Pioneer Trust & Savings Bank*, 71 Ill. 2d at 518; *McKin-*

*ney*, 1 Ill. App. 2d at 543-45; see *In re Nau*, 153 Ill. 2d 406, 607 N.E.2d 134 (1992).

I also believe that unless the respondent is committed and receives treatment, she is reasonably expected to inflict serious harm upon herself in the future, based upon the record. There is no question that respondent is mentally ill and in need of treatment.

Respondent contends that her inability to provide for her basic physical needs so as to guard herself from serious harm was not proved by clear and convincing evidence.[1]

As stated by this court in *In re Ingersoll*, 188 Ill. App. 3d 364, 544 N.E.2d 409 (1989):

> "An individual is subject to involuntary admission if the State establishes by clear and convincing evidence that a person is mentally ill and, because of that illness, she is unable to provide for her basic needs so as to guard herself from serious harm. [Citation.] This illness must prevent her from caring for her basic physical needs by substantially impairing her thought process, perception of reality, emotional stability, judgment, behavior, or ability to cope with life's ordinary demands." *In re Ingersoll*, 188 Ill. App. 3d at 368.

Moreover, in determining whether an individual is unable to provide for her basic physical needs, a circuit court should consider certain factors, including whether that individual has the ability to secure food, shelter and necessary medical attention; whether that individual has a place to live or a family to assist her; whether that individual is able to function in society; and whether that individual has an understanding of money or a concern for it as a means of sustenance. *In re Rovelstad*, 281 Ill. App. 3d 956, 968, 667 N.E.2d 720 (1996); *In re Tuman*, 268 Ill. App. 3d 106, 112, 644 N.E.2d 56 (1994); *In re Winters*, 255 Ill. App. 3d 605, 609, 627 N.E.2d 410 (1994); *In re Long*, 237 Ill. App. 3d 105, 110, 606 N.E.2d 1259 (1992). However, a circuit court need not wait until the inability of an individual to provide for her basic physical needs manifests itself in actual harm before ordering involuntary commitment. *In re Carmody*, 274 Ill. App. 3d 46, 50, 653 N.E.2d 977 (1995); *In re Knapp*, 231 Ill. App. 3d 917, 920, 596 N.E.2d 1171 (1992); *In re Ingersoll*, 188 Ill. App. 3d at 369.

A circuit court's decision to involuntarily commit an individual is accorded great deference and will not be disturbed on appeal unless

---

[1]Respondent also contends that she was not proved by clear and convincing evidence to be an individual reasonably expected to inflict serious physical harm upon herself or another in the near future. However, I need not reach this issue, for I have already found that respondent was not tried or involuntarily committed on that basis.

that decision is shown to be against the manifest weight of the evidence. *In re Long*, 237 Ill. App. 3d at 109-10. A decision is against the manifest weight of the evidence if the record on appeal clearly establishes that a contrary decision was the proper result. *In re Knapp*, 231 Ill. App. 3d at 919.

Here, Philippe testified that respondent's mental illness prevents her from using good judgment in protecting herself, as evidenced by her extended time outside barefoot and without a coat during the wintertime. The evidence also indicated that, while capable of securing a place to live temporarily, respondent does not have an adequate understanding of money, for she does not budget and consequently is unable to provide for her other basic physical needs. Nor does the evidence indicate that respondent has a family capable of providing assistance. See *People v. Sharkey*, 60 Ill. App. 3d 257, 265, 376 N.E.2d 464 (1978). It was further shown that respondent does not function well in society, prone as she is to mood swings, trespassing and public outbursts. Under these circumstances, I cannot say that the circuit court's decision to involuntarily commit respondent was against the manifest weight of the evidence and therefore would not disturb that decision.

## LEAST RESTRICTIVE ALTERNATIVE

Respondent lastly contends that involuntary commitment was not proved by clear and convincing evidence to be the least restrictive alternative for treatment of her mental illness. According to respondent, there was no evidence concerning the appropriateness of other less restrictive alternatives, such as an intermediate care facility or out-patient treatment.

Pursuant to section 3—811 of the Mental Health and Developmental Disabilities Code:

> "If any person is found subject to involuntary admission, the court shall consider alternative mental health facilities which are appropriate *** to the respondent, including but not limited to hospitalization. *** The court shall order the least restrictive alternative for treatment which is appropriate." 405 ILCS 5/3—811 (West 1996).

Here, Philippe testified that a less restrictive alternative to hospitalization would be inappropriate because, in her opinion, respondent cannot "take care of herself outside." Philippe also stated that respondent would benefit from further hospitalization and that she "needs in-patient treatment." I believe that testimony was sufficient to justify the hospitalization of respondent. Moreover, I find respondent's insinuation that her parents may be able to care for her is particularly unpersuasive in light of the fact that her father pre-

pared and signed the petition seeking her commitment. *Sharkey*, 60 Ill. App. 3d at 265.

## CONCLUSION

For the aforementioned reasons, I would affirm the order of the circuit court.