*In re* MARIA SLAUGHTER, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Maria Slaughter, Respondent-Appellant).

Second District   No. 2—92—0321

Opinion filed December 6, 1993.—Rehearing denied January 20, 1994.

William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Respondent, Maria Slaughter, appeals a circuit court order committing her to the Department of Mental Health and Developmental Disabilities (see 405 ILCS 5/3—600 *et seq.* (West 1992)). She argues that the order must be reversed because: (1) the trial court abused its discretion when, after the hearing had begun, it granted *sua sponte* a continuance to enable the State to obtain and file the needed dispositional report (see 405 ILCS 5/3—810 (West 1992)); and (2) there was no clear and convincing evidence that respondent was mentally ill. We affirm.

On February 20, 1992, the State filed its petition for involuntary admission, alleging that respondent was mentally ill; that, because of her mental illness, she was reasonably expected to inflict serious physical harm upon herself in the near future; and that she was in need of immediate hospitalization for the prevention of such harm.

On February 21, the circuit court heard evidence on the petition. The State called Dr. Farzana Husain, a psychiatrist at the Elgin Men-

tal Health Center (EMHC). Dr. Husain stated that she had observed respondent and reviewed the chart and records from Mercy Hospital (Mercy), where respondent had been before being transferred to EMHC. Respondent had refused to speak to Dr. Husain, but the doctor testified that this did not prevent her from reaching psychiatric conclusions about respondent. A patient's history was the most important factor for an evaluation; on rare occasions, Dr. Husain had made evaluations without having interviewed the patient.

Dr. Husain believed, to a reasonable degree of medical certainty, that respondent suffered from a mental illness, *i.e.*, a depressive condition with a risk of suicidal intent, and that respondent could reasonably be expected to inflict harm upon herself in the near future.

Dr. Husain then testified to the factual basis for her conclusions. In accord with *Wilson v. Clark* (1981), 84 Ill. 2d 186, the trial court accepted this factual testimony not as substantive evidence but only so the State could show what information Dr. Husain used to reach her conclusions. Since 1986, respondent had been hospitalized at Mercy six times; four of those hospitalizations followed suicide attempts. These hospitalizations failed because respondent did not follow up with treatment. Respondent frequently called police or came to the Mercy emergency room stating that she wanted to kill herself. Also, according to a detailed report from a physician who worked in the Mercy emergency room, respondent had repeatedly voiced suicidal ideations. A copy of the emergency physician's certificate was attached to the State's petition for involuntary admission. Dr. Husain relied greatly on this certificate in making her diagnosis.

Respondent was guarded and withdrawn and was unable to care for herself. Upon arriving at EMHC, respondent refused to bathe; a nurse had to bathe her. Respondent would not communicate with others, except to say briefly that she did not want to be committed. Because of the danger of suicide, she was on "close observation" every 15 minutes. This was the second highest level of scrutiny; the closest scrutiny, one-on-one observation, was used for patients who had active suicidal plans and were "doing something destructive."

Dr. Husain acknowledged that a patient rationally could be withdrawn and uncommunicative, as whatever the patient said could be used against her in a commitment proceeding.

Dr. Husain opined that, at the time of the hearing, hospitalization at EMHC was the least restrictive environment in which respondent could be treated. Respondent needed a structured setting and long-term supervised care.

Respondent testified in her own behalf. She knew the year, the day of the week, and that she had been at EMHC for a day. She stated that, upon arriving at EMHC, she had taken a quick shower that the nurse did not find adequate; respondent showered regularly. Because her stomach was upset, respondent had eaten only a banana that day. When she was at Mercy, initially she "didn't eat"; however, she later regularly ate three meals a day at Mercy. The last time she was not confined, respondent had eaten only one meal a day, but this was because she did not have enough money to eat more frequently.

If she was released from EMHC, respondent would live in her apartment. Admittedly, she did not currently have a job. She was taking her medication regularly.

Respondent acknowledged that, in November 1991, she had been hospitalized after she took too much of her antidepressant medication. However, it was not a suicide attempt, and she called the ambulance that took her to the hospital to treat her for the overdose. At that time, respondent had been feeling badly because she had had a "big fight" with her former husband. Respondent knew she was presently under a suicide watch, but she testified that, although she was depressed and needed counseling, she had no desire or plan to commit suicide.

During argument, respondent's counsel argued that the court lacked jurisdiction to enter an order in the case because, by the State's admission, no treatment plan had been filed. The trial judge noted the objection. The court concluded that the State had proved by clear and convincing evidence that respondent was suffering from a mental illness that carried a substantial risk of suicide; thus, she was reasonably expected to inflict harm upon herself in the near future.

The judge stated that EMHC was the least restrictive environment at the time of the hearing. However, the judge stated that the case would be continued for 14 days so that the facility could file a treatment plan and also so that the court could make a final order specifying the period of commitment.

On February 28, 1992, the court entered a written order committing respondent to EMHC. On March 13, 1992, respondent filed her notice of appeal.

Before we proceed to the merits of this appeal, we note that, after the expiration of the commitment period ordered in this case, respondent was voluntarily admitted to the Department of Mental Health. However, here, as generally, we do not apply the mootness doctrine to an appeal from an order of commitment to the Depart-

ment of Mental Health. See *In re Venegas* (1991), 218 Ill. App. 3d 423, 424; *Yiadom v. Kiley* (1990), 204 Ill. App. 3d 418, 424-25.

■ Respondent argues first that the trial court abused its discretion by ordering, on its own motion and after the hearing had begun, a continuance so that the State could file the required dispositional report (see 405 ILCS 5/3—810 (West 1992)). Respondent argues that, under Supreme Court Rule 231 (134 Ill. 2d R. 231), a continuance may be granted after the trial has begun only for particularly grave reasons. The State replies that, under section 3—800(b) of the Mental Health and Developmental Disabilities Code (405 ILCS 5/3—800(b) (West 1992)), the trial court has broad authority to order, on its own motion, a continuance of up to 15 days even after the hearing has begun. Respondent replies that Rule 231 is controlling and that there was no reason, other than the State's laxity in preparing a treatment plan, to continue the cause.

We need not decide whether there is a conflict between the rule and the statute. We conclude that, under either provision, there was no abuse of discretion or undue prejudice to respondent. The Mental Health and Developmental Disabilities Code requires only that a dispositional report be filed before the court enters a final order of disposition. (405 ILCS 5/3—810 (West 1992); *In re James* (1989), 191 Ill. App. 3d 352, 355-56.) There is no requirement that the report be on file before the court has decided whether any form of commitment is, in fact, warranted. In granting the continuance here, the trial court was simply ensuring that, once respondent's need for treatment had been established, a treatment plan would be available to guide the court's final disposition of this case. We find nothing improper or unfairly prejudicial to respondent in the court's action.

■ Respondent argues second that the State did not prove the allegations of the petition by clear and convincing evidence. (See 405 ILCS 5/3—808 (West 1992); *James*, 191 Ill. App. 3d at 354.) Respondent argues that, under *In re Cutsinger* (1989), 186 Ill. App. 3d 219, Dr. Husain's expert opinion that respondent met the criteria for commitment was legally insufficient. According to respondent, there must not only be a sufficient factual basis for the expert's opinion, but there must also be substantively admissible factual evidence supporting the allegations of the petition. Respondent notes that, although the court heard considerable evidence of the factual basis for Dr. Husain's conclusion, this evidence was admitted only for the purpose of establishing the opinion's foundation. Thus, respondent argues, there was no independent substantively admissible evidence that respondent

was mentally ill or that her mental illness posed a risk that she would harm herself or others in the near future.

We cannot accept respondent's argument, as its premise is incorrect. Nowhere in *Cutsinger* or in other cases can we find the two-pronged evidentiary requirement upon which respondent insists. The case law states only that the necessary medical opinion must have a sufficient factual basis. (*Cutsinger*, 186 Ill. App. 3d at 223, relying in part on *In re Cochran* (1985), 139 Ill. App. 3d 198, 200.) Where the medical opinion has a sufficient basis, a court properly may conclude that the opinion alone is clear and convincing evidence that involuntary admission is proper. See, *e.g.*, *James*, 191 Ill. App. 3d at 354-55.

Respondent also argues that Dr. Husain's testimony itself was not clear and convincing. Respondent asserts that her behavior while she was confined was indicative neither of mental illness nor of suicidal tendencies. The State counters by observing that, prior to the hearing, respondent had been hospitalized numerous times, including four times for attempted suicide, and that these hospitalizations had proven ineffectual.

The trial court's finding that respondent was a person subject to involuntary admission is entitled to great deference, and we will not set it aside unless it is manifestly erroneous. (*In re Friberg* (1993), 249 Ill. App. 3d 86, 94; *In re Mazzara* (1985), 133 Ill. App. 3d 146, 149.) Given respondent's admission that she was suffering from long-standing depression, along with the evidence that she had attempted suicide and had been hospitalized several times before (evidence that formed much of the basis for the expert testimony), we cannot say that the trial court's findings were manifestly erroneous.

The judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and DOYLE, JJ., concur.