*In re* BARBARA TUMAN, Alleged to be a Person Subject to Involuntary Admission (The People of the State of Illinois, Petitioner-Appellee, v. Barbara Tuman, Respondent-Appellant).

Second District  No. 2—94—0467

Opinion filed December 13, 1994.

William E. Coffin, of Guardianship & Advocacy Commission, of Chicago, for appellant.

David R. Akemann, State's Attorney, of St. Charles (William L. Browers

and Marshall M. Stevens, both of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

PRESIDING JUSTICE INGLIS delivered the opinion of the court:

Respondent, Barbara Tuman, appeals the order of the circuit court of Kane County finding her to be a person subject to involuntary commitment and committing her to the Department of Mental Health (Health Center) for eight weeks. On appeal, respondent challenges the order on the basis that the State did not prove by clear and convincing evidence that respondent is mentally ill and unable to care for her basic needs. We reverse.

On March 19, 1994, the State filed a petition for involuntary admission with the clerk of the circuit court of Kane County. The petition alleged that respondent was mentally ill and could reasonably be expected to inflict harm upon herself or another. The petition was subsequently amended to allege additionally that respondent was unable to care for herself so as to guard herself from serious harm.

The petition specifically alleged that respondent had been brought from the parking lot of Woodland Hospital to the Sherman Hospital emergency room and then to the Health Center. The petition further alleged that respondent was verbally and physically abusive, needed to be restrained, exhibited nonsensical speech, and had previously been admitted to various psychiatric hospitals for manic psychotic episodes.

A hearing was held on March 25, 1994, for the purpose of determining whether respondent should be involuntarily committed to the Health Center. The only witness for the State was Dr. Sied Anwar, a psychiatrist at the Health Center. Dr. Anwar testified that respondent suffered from schizo-affective disorder, which he described as mood swings coupled with speaking difficulties.

Dr. Anwar's diagnosis was based on a review of respondent's records and an examination of the patient, with much reliance being placed on emergency room records from Sherman Hospital and Chicago Reed Hospital. However, none of these records were offered into evidence by the State. Furthermore, Dr. Anwar did not directly observe respondent's behavior while she was at Sherman Hospital. Dr. Anwar was not able to examine respondent's behavior until her arrival at the Health Center. He further testified that respondent was noncooperative during the examination.

Dr. Anwar testified that, in his opinion, respondent could reasonably be expected to inflict serious harm on herself or another. This conclusion was based on the incident which resulted in respondent being taken to the Sherman Hospital emergency room. Respondent

allegedly threw valuable objects around her grandmother's house. Respondent was taken to Woodland Hospital by a family friend where she was evaluated and sent on to Sherman Hospital. She was then allegedly placed in restraints at Sherman Hospital for threatening the hospital staff. However, none of the records from Sherman Hospital were provided by the State, and we are therefore unable to determine the nature or extent of these alleged threats.

Dr. Anwar also testified that respondent had made fists at various staff members. However, Dr. Anwar was not present on these occasions, and these staff members did not testify. Dr. Anwar testified that respondent had never actually struck any staff members. Dr. Anwar also testified that respondent had been admitted to the Department of Mental Health on 76 other occasions.

Dr. Anwar testified that, in his opinion, respondent was unable to provide for her basic needs so as to protect herself from serious harm. This conclusion was based on respondent's uncooperativeness and nonresponsiveness when he attempted to examine her.

He further opined that respondent's judgment was impaired because she refused to take medication when it was offered. Dr. Anwar testified that respondent was eating and sleeping without any problem but that she needed some assistance in grooming and dressing. The latter conclusion he drew from her wearing warm clothes and sunglasses indoors.

Dr. Anwar testified that commitment to the Health Center was the least restrictive alternative treatment due to the chronicity of the illness coupled with respondent's poor judgment and noncompliance with treatment. A treatment plan was developed which was to last eight weeks.

The State called respondent to testify but she refused to do so. The judge did not order respondent to testify. The circuit court ordered that respondent be committed to the Health Center for eight weeks because her lack of communication, coupled with her past history of admissions to mental health facilities, led the court to conclude that respondent probably did have a mental illness and would be unable to care for herself. This timely appeal followed.

Respondent alleges the circuit court erred in committing her because the State did not prove by clear and convincing evidence that: (1) respondent was mentally ill; (2) respondent could reasonably be expected to inflict serious harm upon herself or another in the near future or, in the alternative, respondent would be unable to provide for her basic needs so as to guard herself from serious harm; and (3) the State failed to show that hospitalization at the Health Center was the least restrictive alternative for treatment.

■ It is well established that involuntary admission procedures implicate substantial liberty interests, which must be balanced against the need to provide care for persons unable to care for themselves as well as to protect society from dangerous mentally ill persons. (*In re Schumaker* (1994), 260 Ill. App. 3d 723, 727.) A person must not be confined against her will merely because of a mental illness if she can live safely in freedom. (*In re Winters* (1994), 255 Ill. App. 3d 605, 609.) The State has the burden of proving the need for confinement, in accordance with the Mental Health and Developmental Disabilities Code (405 ILCS 5/1—100 *et seq.* (West 1992)), by clear and convincing evidence. (*In re Long* (1992), 237 Ill. App. 3d 105, 109-10.) A reviewing court may not disturb the trial court's decision unless it is against the manifest weight of the evidence. *Schumaker*, 260 Ill. App. 3d at 727.

First, we address respondent's argument that the State failed to meet its burden as to all issues because the only evidence presented at trial was the psychiatrist's opinion testimony. In order to resolve this issue, we must examine the meaning of "clear and convincing" in the context of an involuntary admission. Respondent argues that in order for the State to commit a person involuntarily to a mental hospital, the State must meet a two-pronged test. Specifically, respondent argues that the State must submit (1) "explicit medical testimony" that the respondent can reasonably be expected to be a serious danger to herself or others; and (2) said "explicit medical testimony" must be supported by evidence that the respondent intends to harm herself or another. (*In re Schumaker*, 260 Ill. App. 3d at 728.) Respondent interprets the second prong to require that the "supportive" evidence be substantively admitted.

The State argues that the two-pronged test was specifically rejected by this court in the case of *In re Slaughter* (1993), 253 Ill. App. 3d 718, 723. We did not, however, intend *Slaughter* to allow an involuntary commitment to occur based solely on the opinion testimony of a doctor who has not been able effectively to examine the patient.

In *In re Slaughter*, the respondent argued that because certain evidence was admitted only for the purpose of establishing the foundation of the doctor's opinion, the State had not met its burden because no substantive evidence of respondent's condition had been admitted. (*Slaughter*, 253 Ill. App. 3d at 722.) We went on to note that the necessary medical opinion must have a sufficient factual basis, but, as a matter of law, there need not be independent substantive evidence in order for such an opinion to be "clear and convincing." (*Slaughter*, 253 Ill. App. 3d at 723.) The medical opinion

was supported by personal observations and a review of the records from various hospitals. This opinion was further reinforced by the respondent's own testimony, which the court was able to evaluate in determining whether the medical opinion was supported by "clear and convincing" evidence. *Slaughter*, 253 Ill. App. 3d at 721.

Thus, while the State in the above case did not present independently admissible evidence, the doctor did testify that he personally observed respondent and had reviewed extensive medical records. When coupled with the respondent's own testimony, we determined that the medical opinion had a sufficient factual basis to render it "clear and convincing." (*Slaughter*, 253 Ill. App. 3d at 723.) While the underlying factual support of a medical opinion need not, as a matter of law, be substantively admissible, the opinion must be supported by a sufficient factual basis to render it "clear and convincing." Therefore, a reviewing court must carefully evaluate all evidence presented by the State to determine whether it is "clear and convincing."

While a witness may use unsubstantiated evidence that is ordinarily hearsay in order to explain the basis of his opinion, so long as that evidence is of the type reasonably relied upon by experts in the field, that evidence is not necessarily admissible to prove the truth of the matter asserted. (*Wilson v. Clark* (1981), 84 Ill. 2d 186, 193.) Where the State chooses not to offer any additional testimony of persons who may have actually witnessed the events which formed the basis of the expert's testimony, and the State does not present any additional evidence, such as hospital records, emergency room reports, or other relevant documents, a court must carefully examine the facts which form the basis of the expert's testimony to determine whether the testimony, standing alone, is "clear and convincing." In order to commit a person involuntarily to a mental health facility, the State must prove by clear and convincing evidence that a person is mentally ill and that, as a result of this illness, he is reasonably expected to inflict serious physical harm upon himself or another in the near future, or is unable to protect himself from serious harm. (*In re Houlihan* (1992), 231 Ill. App. 3d 677, 682.) Respondent initially contends that the State did not prove by clear and convincing evidence that respondent was mentally ill.

For a medical opinion as to the existence of a mental illness to be clear and convincing, it is sufficient if the expert indicates the basis of his diagnosis by having directly observed a respondent on several occasions. (*In re Doe* (1978), 56 Ill. App. 3d 1052, 1057.) Dr. Anwar's diagnosis of respondent's mental illness was based on personal observations and the medical records of the emergency

room. Dr. Anwar testified that respondent did not make a lot of sense when he would interview her. He further testified that she was irritable. This testimony, when coupled with respondent's 76 other admissions and Dr. Anwar's review of respondent's records, especially in light of a psychiatrist's expertise in making a diagnosis of a mental illness, leads us to conclude that Dr. Anwar's diagnosis was supported by a sufficient factual basis to render said diagnosis "clear and convincing" evidence. Therefore, the trial court's determination that respondent was suffering from a mental illness was not manifestly erroneous.

Respondent next argues that the State did not prove by clear and convincing evidence that respondent could reasonably be expected to inflict serious harm upon herself or another in the near future. However, upon an examination of the record, the trial court did not base the order of involuntary commitment on the fact that respondent would be a danger to others. Therefore, this argument is without merit.

Respondent further argues that the State did not prove by clear and convincing evidence that respondent was unable to provide for her basic physical needs so as to protect herself from serious harm. (405 ILCS 5/1—119(2) (West Supp. 1993).) Generally, the inability to care for oneself so as to guard against physical harm is found where one's illness substantially impairs her thought processes, perceptions, emotional stability, behavior, or ability to cope with life's ordinary demands. (*In re Ingersoll* (1989), 188 Ill. App. 3d 364, 368.) In making such a determination, a court should consider whether a person (1) can obtain her own food, shelter, or necessary medical care; (2) has a place to live or a family to assist him; (3) is able to function in society; and (4) has an understanding of money or a concern for it as a means of sustenance. *Long*, 237 Ill. App. 3d at 110.

Dr. Anwar testified that respondent was, as a result of her mental illness, unable to provide for her basic needs so as to guard herself from serious harm. In support of this opinion, Dr. Anwar testified that respondent cannot carry on a conversation and does not trust people. He further testified that she will not take medication for headaches and that her judgment was impaired. He testified that respondent has been eating and sleeping properly. When asked if she was taking care of her grooming needs, he responded that she needed prompting. When asked to elaborate, he stated that she would wear warm clothes and wears sunglasses.

While some of the above behaviors might be unusual under certain conditions, we are unable to conclude that the totality of the

circumstances in the case at bar indicates that respondent poses a threat to her own safety. While we recognize that the trial court's determination regarding involuntary admission is entitled to deference, after a careful review of the record, Dr. Anwar's testimony was not supported by clear and convincing evidence that respondent would be unable to guard against serious physical harm.

No evidence was presented regarding respondent's ability to obtain her own food, shelter, or necessary medical care. No evidence was presented regarding respondent's ability to handle financial matters. Furthermore, no evidence was presented regarding whether respondent had a place to live or would be able to reside with her family members. While respondent may have difficulties functioning in society, there was little factual support for Dr. Anwar's opinion that respondent was unable to guard herself against physical harm. As the State chose not to present any additional evidence to indicate respondent's inability to guard against harm to herself, Dr. Anwar's opinion, by itself, is not clear and convincing evidence supporting respondent's admission.

Therefore, the trial court's finding that respondent was unable to guard herself from serious physical harm was manifestly erroneous. As such, we need not address respondent's final contention that hospitalization at the Health Center was not the least restrictive alternative for treatment.

For the foregoing reasons, the circuit court of Kane County's order committing respondent to the Health Center is reversed.

Reversed.

DOYLE and COLWELL, JJ., concur.